**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| LOVETT AUTO & TRACTOR PARTS, INC., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.  1:08-cv-2046 |
| v. | ) ) | |
| CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL INC.; WIX FILTRATION CORP. LLC; CUMMINS FILTRATION, INC.; THE DONALDSON COMPANY; BALDWIN FILTERS, INC.; BOSCH U.S.A.; MANN + HUMMELL U.S.A., INC.; and ARVINMERITOR, INC., | ) ) ) ) ) ) ) ) ) | **MOTION FOR FINDING OF RELATEDNESS AND REASSIGNMENT OF CASES PURSUANT TO LOCAL RULE 40.4** |
| Defendants. | ) ) | |
| _____ | ) | |
| This Document Relates To: | ) ) | |
| *Neptune Warehouse Distributors, Inc. v. Champion Laboratories, Inc. et al*, Case No. 1:08-cv-2317 | ) ) ) ) | |
| *S.A.E. Warehouse, Inc. v. Champion Laboratories, Inc. et al*, Case No. 1:08-cv-2804 | ) ) ) | |
| *Pawnee/S.A.E. Warehouse, Inc. v. Champion Laboratories, Inc. et al*, Case No. 1:08-cv-2806 | ) ) ) ) | |
| *Hovis Auto Supply, Inc. v. Robert Bosch, LLC*, et al., Case No. 1:08-cv-2903 | ) ) ) | |
| _____ | ) | |

Plaintiffs Neptune Warehouse Distributors, Inc. ("Neptune"), S.A.E. Warehouse, Inc.

("S.A.E."), Pawnee/S.A.E. Warehouse, Inc. ("Pawnee"), and Hovis Auto Supply,

Inc.("Hovis") respectfully request that the Court enter an order finding that the cases

captioned *Neptune Warehouse Distributors, Inc. v. Champion Laboratories, Inc. et al*, Case

No. 1:08-cv-2317 (filed April 23, 2008 and assigned to Judge Pallmeyer), *S.A.E. Warehouse,*

*Inc. v. Champion Laboratories, Inc. et al*, Case No. 1:08-cv-2804 (filed May 14, 2008 and assigned to Judge Shadur), *Pawnee/S.A.E. Warehouse, Inc. v. Champion Laboratories, Inc. et al*, Case No. 1:08-cv-2806 (filed May 14, 2008 and assigned to Judge Shadur) and *Hovis Auto Supply, Inc. v. Robert Bosch, LLC, et al*., Case No. 1:08-cv-2903 (filed May 19, 2008 and assigned to Judge Norgle) are related to the instant action, *Lovett Auto & Tractor Parts, Inc. v. Champion Laboratories, Inc. et al.* ("*Lovett*") (filed Apr. 10, 2008).  Copies of the Complaints filed in *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* are attached hereto as Exhibits A-D. Plaintiffs Neptune, S.A.E., Pawnee and Hovis further request that the Court recommend to the Executive Committee of the Northern District of Illinois that the *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* cases be reassigned to this Court's docket.

Under Local Rule 40.4(a), two or more civil cases may be related if at least one of the following is true:

(1)     the cases involve the same property;

(2)     the cases involve some of the same issues of fact or law;

(3)     the cases grow out of the same transaction or occurrence; or

(4)     in class action suits, one or more of the classes involved in the cases is or are the same.

L.R. 40.4(a)(1)-(4) (2006).  The *Neptune*, S.*A.E.*, *Pawnee* and *Hovis* cases are related to *Lovett* within the meaning of Local Rule 40.4(a).  The cases involve the same issues of fact or law as *Lovett*, grow out of the same occurrence as *Lovett*, and, like *Lovett*, are class action suits involving the same putative class.  Specifically, each case alleges an antitrust conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, among the same set of

defendants,[1] and each case seeks to recover treble damages, equitable relief, expenses and

costs of suit for injuries sustained by the named plaintiffs.  Finally, Neptune, S.A.E., Pawnee

and Hovis seek to represent the same class, which is comprised of direct purchasers of

replacement air, oil, fuel and transmission filters in the United States.[2]

Under Local Rule 40.4(b), a case may be reassigned to another judge if it is related to

an earlier-filed case assigned to that judge and each of the following conditions are met:

> (1)     both cases are pending in the Northern District of Illinois;
>
> (2)     the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
>
> (3)     the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
>
> (4)     the cases are susceptible of disposition in a single proceeding.

L.R. 40.4(b)(1)-(4) (2006).  The *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* cases satisfy these

conditions.  First, *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* are pending in the Northern District of

Illinois.  Second, all five cases are based upon the same factual allegations and assert the

----

[1] The *Lovett* and *Neptune* actions name the same ten defendants:  Champion Laboratories, Inc.; Purolator Filters N.A. LLC; Honeywell International Inc.; Wix Filtration Corp. LLC.; Cummins Filtration, Inc.; The Donaldson Company; Baldwin Filters, Inc.; Bosch U.S.A.; Mann + Hummell U.S.A., Inc.; and ArvinMeritor, Inc.  The *S.A.E.* and *Pawnee* actions name the same defendants as *Lovett* and *Neptune* with the following exceptions:  *S.A.E.* and *Pawnee* name Wix Filtration Products as opposed to Wix Filtration Corp. LLC; and *S.A.E.* and *Pawnee* name United Components, Inc., the parent corporation of Champion Laboratories, Inc., and The Carlyle Group, which owns United Components, Inc.  On May 19, 2008, S.A.E. and Pawnee voluntarily dismissed The Carlyle Group without prejudice.  The *Hovis* action names the same defendants as *Lovett* and *Neptune* with the following exceptions:  *Hovis* names Robert Bosch, LLC as opposed to Bosch U.S.A.; and *Hovis* does not name Cummins Filtration, Inc. or The Donaldson Company.

[2] Other related actions are pending in federal district courts across the country and various motions have been filed before the Judicial Panel on Multidistrict Litigation pursuant to 29 U.S.C. § 1407 seeking consolidation and transfer of all such related actions to a single district court for pretrial purposes.  Plaintiff Neptune joined in such a motion filed by Lovett seeking transfer of all related actions to this Court.

same legal claims and theories, so that the handling of all such related cases by the same judge will result in a substantial saving of judicial time and effort.  Third, none of the related putative class actions has progressed to a point where designating *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* as related would delay proceedings in *Lovett*, the earlier filed case.  Finally, because *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* involve the same issues of law and fact and the same putative classes, all four cases are susceptible to disposition in the same proceeding as the *Lovett* action.

Accordingly, Neptune, S.A.E., Pawnee and Hovis respectfully request that the Court enter an order:  (i) finding the *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* cases related to the *Lovett* case pursuant to L.R. 40.4; and (ii) requesting that the Executive Committee reassign *Neptune*, *S.A.E.*, *Pawnee* and *Hovis* to this Court's docket for consolidation with *Lovett*.

Dated:  May 22, 2008               By:     /s/ Michael J. Freed
                                           Michael J. Freed (ARDC No. 0869120)
                                           Steven A. Kanner (ARDC No. 3125292)
                                           William H. London (ARDC No. 6196353)
                                           Douglas A. Millen (ARDC No. 6226978)
                                           **FREED KANNER LONDON &**
                                           **MILLEN LLC**
                                           2201 Waukegan Road, Suite 130
                                           Bannockburn, IL  60015
                                           Telephone: (224) 632-4500
                                           Facsimile:  (224) 632-4521
                                           Email:  mfreed@fklmlaw.com
                                           skanner@fklmlaw.com
                                           wlondon@fklmlaw.com
                                           dmillen@fklmlaw.com

                                           *Counsel for Plaintiffs Neptune Warehouse*
                                           *Distributors, Inc., S.A.E. Warehouse, Inc.,*
                                           *and Pawnee/S.A.E. Warehouse, Inc.*

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
**SAVERI & SAVERI, INC.**
111 Pine Street, Suite 1700
San Francisco, CA  94111
Telephone:  (415) 217-6810

Robert J. Bonsignore
Robin E. Brewer
**BONSIGNORE & BREWER**
23 Forest Street
Medford, MA 02155
Telephone:  (781) 391-9400

*Counsel for Plaintiff Neptune Warehouse
Distributors, Inc.*

W. Joseph Bruckner
Heidi M. Silton
Anna M. Horning Nygren
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue South,
Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900

Jayne Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  (954) 515-0123

Lee Albert
**MAGER & GOLDSTEIN LLP**
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Telephone:  (215) 640-3280

Dennis J. Stewart
**HULETT, HARPER, STEWART, LLP**
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:  (619) 338-1133

***Counsel for Plaintiffs S.A.E. Warehouse,
Inc. and Pawnee/S.A.E. Warehouse, Inc.***


Steven A. Hart (ARDC No. 6211008)
**SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.**
233 South Wacker Drive
Sears Tower-Suite 5500
Chicago, IL  60606
Telephone:  (312) 645-7800

Bruce L. Simon
**PEARSON, SIMON, SOTER,
WARSHAW & PENNY, LLP**
44 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:  (415) 433-9000

***Counsel for Plaintiff Hovis Auto
Supply, Inc.***

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NEPTUNE WAREHOUSE DISTRIBUTORS, INC., individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL INC.; WIX FILTRATION CORP. LLC; CUMMINS FILTRATION, INC.; THE DONALDSON COMPANY; BALDWIN FILTERS, INC.; BOSCH U.S.A.; MANN + HUMMELL U.S.A., INC.; and ARVINMERITOR, INC.,<br><br>　　　　Defendants. | CIVIL ACTION NO. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>FILED: APRIL 23, 2008<br>08CV2317　　PH<br>JUDGE PALLMEYER<br>MAGISTRATE JUDGE MASON |

Plaintiff Neptune Warehouse Distributors, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated in the class defined below, brings this action for treble damages under the antitrust laws of the United States against Champion Laboratories, Inc.; Purolator Filters N.A. L.L.C.; Honeywell International Inc.; Wix Filtration Corp. LLC; Cummins Filtration, Inc.; The Donaldson Company; Baldwin Filters, Inc.; Bosch U.S.A.; Mann + Hummell U.S.A., Inc.; and ArvinMeritor, Inc. (collectively, "Defendants"), and alleges as follows upon information and belief:

### JURISDICTION AND VENUE

1.　　Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, equitable relief, expenses and costs of suit for injuries sustained by Plaintiff and the Class resulting from violations by Defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1. Subject matter jurisdiction is proper pursuant to Section 4(a)

of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1331 and 1337, because the action arises under the laws of the United States.

2.     Defendants are found or transact business within this district and Defendants' interstate trade and commerce is carried out, in substantial part, in this district. Venue therefore lies within this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

3.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

4.     Jurisdiction over all Defendants comports with the United States Constitution, and 15 U.S.C. §§ 15, 22 and 26.

## DEFINITIONS

5.     "Filters" includes, among other things, replacement oil, air, fuel and transmission filters manufactured by the Defendants. Filters are utilized to remove contaminants from combustion engines and related systems. Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders; and transmission filters ensure the proper functioning of an engine's transmission systems.

## PARTIES

6.     Plaintiff Neptune Warehouse Distributors, Inc. is a business located in Chelsea, Massachusetts. During the time period covered by the Complaint, Plaintiff purchased Filters

2

directly from one or more of the Defendants or their subsidiaries and was injured by reason of the antitrust violations alleged herein.

7.      Defendant Purolator Filters N.A. L.L.C. is headquartered in Fayetteville, North Carolina, with a principal mailing address of 2800 South 25th Ave., Broadview, Illinois 60565. Purolator Filters N.A. L.L.C. is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

8.      Defendant Bosch U.S.A. is headquartered in Broadview, Illinois, with its business address at 2800 S. 25th Ave., Broadview, Illinois 60155.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

9.      Defendant Mann + Hummel U.S.A., Inc., is headquartered in Portage, Michigan, with its business address at 6400 S. Sprinkle Road, Portage, Michigan 49002.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

10.     Defendant ArvinMeritor, Inc. is headquartered in Troy, Michigan, with its address at 2135 West Maple Road, Troy, Michigan 48084.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States. ArvinMeritor, Inc. owned Purolator Filters N.A. L.L.C. from January 1999 through March 2006. Thereafter it sold Purolator Filters N.A. L.L.C. to Bosch U.S.A. and Mann + Hummel U.S.A., Inc. Hereinafter, Purolator Filters N.A. L.L.C.; Bosch U.S.A.; Mann + Hummel U.S.A., Inc.; and ArvinMeritor, Inc. are collectively referred to as "Purolator."

11.     Defendant Champion Laboratories, Inc. ("Champion") is headquartered at Albion, Illinois, with its business address at 200 S. Fourth St., Albion, Illinois 62806. During the

3

time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

12.     Defendant Wix Filtration Corp. LLC ("Wix") is headquartered in Gastonia, North Carolina with its address at 1101 Technology Drive, Ann Arbor, Michigan 48108 listed with the North Carolina Secretary of State.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

13.     Defendant Honeywell International, Inc., ("Honeywell") is headquartered at Morristown, New Jersey, with its business address located at 101 Columbia Road, Morristown, New Jersey 07962.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

14.     Defendant Cummins Filtration, Inc., ("Cummins") is headquartered in Nashville, Tennessee, with its business address located at 2931 Elm Hill Pike, Nashville, Tennessee 37214. During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

15.     Defendant The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with its business address located at 1400 W. 94th St., Minneapolis, Minnesota 55431.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

16.     Defendant Baldwin Filters, Inc. ("Baldwin") is headquartered in Kearney, Nebraska, with its business address located at 4400 E. Hwy. 30, Kearney, Nebraska 68848.  During the time period covered in this compliant, Defendant manufactured, sold and distributed Filters throughout the United States.

## CO-CONSPIRATORS

17.     Whenever in this Complaint reference is made to any act, deed, or transaction of

4

any corporation, the allegation means that the corporation engaged in the act, deed or transaction

by or through its officers, directors, agents, employees or representatives while they were

actively engaged in the management, direction, control, or transaction of the corporation's

business or affairs.

18.      The acts alleged in this Complaint to have been done by Defendants were authorized,

ordered and condoned by their parent corporations and authorized, ordered and performed by their

officers, directors, agents, employees, or representatives while engaged in the management,

direction, control or transaction of their business affairs.

19.      Various other persons, firms, and corporations not named as Defendants have

participated as co-conspirators in the violations alleged herein and have performed acts and

made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

20.      Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rules

23(a) and (b)(3) on behalf of the following class (the "Class"):

> All individuals or entities who, during the period from January 1, 1999
> through the present, purchased Filters in the United States directly from
> the Defendants or any of their parents, affiliates, subsidiaries,
> predecessors or successors in interest, at any time. Excluded from the
> Class are Defendants and their officers, directors, management,
> employees, subsidiaries or affiliates and all entities owned by the federal
> government.

21.      Plaintiff does not know the exact number of Class members because such

information is in the exclusive control of Defendants or their coconspirators.  Due to the nature of

the trade and commerce involved, however, Plaintiff believes that Class members number at

least in the hundreds if not thousands and thus are sufficiently numerous and geographically

dispersed throughout the United States so that joinder of all members is impracticable.

22.      Plaintiff is a member of the Class, and Plaintiff's claims are typical of the claims of

5

members of the Class as Plaintiff and all members of the Class are similarly affected by

Defendants' wrongful conduct in violation of the antitrust laws. All members of the Class have paid

artificially inflated prices for Filters. Additionally, all members of the Class were harmed because

Defendants' anticompetitive practices deprived the Class members of competitive markets for

Filters.

      23.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in the prosecution of class actions and

antitrust litigation.

      24.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Such common

questions of law and fact include:

      a.     Whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain or stabilize the price of Filters;

      b.     Whether Defendants' wrongful conduct caused antitrust injury to Plaintiff and the other members of the Class;

      c.     Whether the unlawful conduct of Defendants caused Plaintiff and the other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

      d.     The appropriate Class-wide measure of damages; and

      e.     The appropriate scope of injunctive relief.

      25.     Plaintiff knows of no difficulty that would prevent this case from being

maintained as a class action and class action treatment is a superior method for the fair and

efficient adjudication of this controversy. Class action treatment will, among other things,

allow a large number of similarly situated persons and/or entities to prosecute their common

claims in a single forum, thus avoiding the unnecessary duplication of resources that numerous

individual actions would require. Moreover, class action treatment allows injured persons the

ability to seek redress on claims that might be impracticable to pursue individually.

6

**TRADE AND COMMERCE**

26.     At all material times, Defendants provided Filters to their customers across state lines.

27.     During the relevant time period, in connection with purchase and sale of Filters, monies us well as contracts, bills and other forms of business communication and transactions were transmitted in continuous and uninterrupted flow across state lines.

28.     During the relevant time period, various devices were used to effectuate the illegal acts alleged herein, including the United States mail, interstate travel, and interstate commerce. The activities of Defendants as charged in this Complaint were within the flow of, and have substantially affected, interstate commerce.

**THE FILTERS INDUSTRY**

29.     Filters are utilized to remove contaminants from combustion engines and related systems. Filters become less effective over time as contaminants are filtered out of the respective engine systems, and they are designed to be replaced periodically. Replacement filters are purchased to replace original equipment filters included in new motors.

30.     Oil, air, fuel and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

31.     OEMs purchase filters for use in connection with new vehicles. These filters are installed in vehicles during the production process.

32.     The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products. This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy. For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to

Defendants Bosch and Mann + Hummel. Defendants Bosch and Mann + Hummel now operate

Defendant Purolator as a joint venture. Mann + Hummel, CEO Dieter Seipler has stated that "it was

a natural alliance because Bosch is a major private-brand customer far Mann + Hummel in Europe

and in other regions of the world."

33.    Annual revenues for Filters markets in the United States are approximately $3

billion to $5 billion.

34.    On January 19, 2006, William G. Burch, former employee of both Purolator N.A.

L.L.C. and Champion Laboratories, Inc. ("Champion"), filed a complaint against Champion in state

court in Tulsa, Oklahoma, alleging, among other things, that Mr. Burch was wrongfully

terminated form his employment with Champion for knowing about, and subsequently reporting to

authorities, the antitrust violations alleged in the Pending Actions.

35.    On March 25, 2008, Burch, a former National Accounts and Division Sales

Manager for Defendant Champion, executed an affidavit under oath in *Champion Laboratories.*

*Inc. v. Burch,* 06-CV-4031 (JPG) (S.D. Ill.).  This affidavit, which is made on the basis of personal

knowledge, states as follows:

> a.    Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

> b.    Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

36.    Many of the allegations contained herein, particularly those with respect to the

specifics of meetings between the Defendants, are based on alleged recorded conversations and

the personal knowledge of this former employee.

37.     As a Division Sales Manager responsible for monitoring and coordinating terms of sales, the former employee was privy to, among other things, exchanges of confidential pricing materials by which Defendants unlawfully agreed to the timing and magnitude of price increases throughout the Class period.  These include, among other acts, the following:

  a. on June 28, 1999, a Purolator executive faxed an executive at Honeywell a letter which announced a 6% increase on all Purolator branded filters effective August 15, 1999, but did not send a price increase notification to Purolator's customers until July 1999;

  b. at a trade convention called the Heritage Show in May 1999, representatives of Defendants agreed in person, on behalf of their respective employers, to raise prices for Filters, and Defendants later raised prices in accordance with the wrongful agreements reached at the Heritage Show;

  c. in February 2004, Champion's President informed his sales team that Champion was about to raise prices and told them to make sure Champion's "competitors" were aware of the increase and adjusted their prices accordingly, both in timing and amount, pursuant to wrongful agreements previously reached, which the employees accomplished by meeting with Defendants' representatives;

  d. in 2004, an internal Champion e-mail with the subject line "Price Increases" confirmed that the other Defendants were in agreement regarding a coordinated price increase; and

  e. pursuant to the unlawful agreement, Defendants each instituted similar price increases, in amounts of approximately 4-6%, at the same times.

38.     Defendants engaged in repeated in-person meetings to further their anticompetitive scheme. Many of these meetings occurred at the annual Filter Manufacturers Council meeting in Nashville, Tennessee. The Filter Manufacturers Council is a trade organization comprised of the Defendants and other industry participants.

## VIOLATIONS ALLEGED

39.     Beginning at least as early as January 1, 1999 and continuing thereafter, Defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other

representatives, entered in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

40.     The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and/or allocate the market for, Filters sold in the United States and elsewhere.

41.     As a result of their unlawful actions, Defendants were able to force coordinated price increases on the Filters markets.

42.     Defendants' unlawful conduct took many forms, including but not limited to:

    a.     attending meetings and/or otherwise exchanging information regarding the pricing and sale of Filters;

    b.     selling Filters to customers at collusive and non-competitive prices;

    c.     agreeing to sell Filters at specified; pre-arranged prices;

    d.     agreeing not to compete for each other's customers;

    e.     accepting payment at non-competitive prices;

    f.     giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and

    g.     fraudulently concealing the wrongful conduct.

43.     Defendants' wrongful conduct in manipulating prices was undertaken in order to charge artificially inflated prices for their Filters.

44.     As a direct result of the unlawful conduct of Defendants and their co-conspirators in furtherance of their continuing contract, combination, or conspiracy, Plaintiff and other members of the Class have been injured in their business and property in that they have paid more for Filters than they would have paid in the absence of Defendants' and its co-conspirators' price fixing.

## EFFECTS

45.    The above combination and conspiracy has had the following effects, among

others:

    a.    price competition in the sale of Filters by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

    b.    prices for Filters sold by Defendants and their co-conspirators have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

    c.    purchasers of Filters from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

46.    As a direct and proximate result of the unlawful conduct of Defendants and their

co-conspirators, Plaintiff and other members of the Class have been injured in their business and

property in that they paid more for Filters than they otherwise would have paid in the absence of

the unlawful conduct of Defendants and their co-conspirators.

## DAMAGES

47.    During the Class Period, Plaintiff and the other members of the class purchased

Filters directly from Defendants, or their subsidiaries, agent, or co-conspirators, and by reason

of the antitrust violations herein alleged, paid more for such products than they would have paid

in the absence of such antitrust violations. As a result, Plaintiff and the other members of the

Class have sustained damages to their business and property in an amount to be determined at

trial.

## FRAUDULENT CONCEALMENT

48.    Plaintiff and other members of the Class had no knowledge of Defendants' unlawful

scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the

exercise of due diligence.  Defendants affirmatively concealed their illegal acts and these acts only

11

recently became known to the public through filings in the aforementioned litigation in the Southern District of Illinois. As a result of Plaintiff's lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the right of action by Plaintiff and other members of the Class.

49.    Moreover, Defendants' actions constitute a continuing violation in that Defendants' anticompetitive practices resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injured Plaintiff and other members of the Class. These artificially inflated prices continue to exist in the relevant markets as Defendants' have yet to cease their unlawful conduct. Upon each and every instance that Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiff and the Class, Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

50.    In addition, Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this Complaint. Such overt acts include the illegal meetings and communications regarding Filter prices described herein.

51.    Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly paid supra-competitive prices for Filters constitutes part of a continuing violation and operates to toll any applicable statutes of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully prays:

A.      that this Court declare this action to be a proper class action under Fed. R. Civ. P. 23(b)(3) on behalf of the Class as defined herein, and direct that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given each member of the class;

B.      that this Court declare the unlawful combination and conspiracy alleged herein to be an unreasonable restraint of trade of commerce in violation of § 1 of the Sherman Act, 15 U.S.C. § 1;

C.      that this Court enjoin, preliminarily and permanently, Defendants from continuing the unlawful combination and conspiracy alleged herein;

D.      that this Court award Plaintiff and each member of the Class damages, as provided by law, and that joint and several judgments in favor of Plaintiff and each member of the Class be entered against Defendants and each of them in an amount to be trebled in accordance with the antitrust laws;

E.      that this Court award Plaintiff and the Class the costs of this suit (including expert fees), and reasonable attorneys fees, as provided by law; and

F.      that this Court award such other and further relief as the nature of this case may require or as may be just, equitable and proper to this Court.

## **JURY DEMAND**

Plaintiff demands a jury trial, pursuant to Fed. R. Civ. P. 38(b), of all triable issues.

13

Dated: April 23, 2008

By: /s/ Douglas A. Millen
    Michael J. Freed (ARDC No. 0869120)
    Steven A. Kanner (ARDC No. 3125292)
    William H. London (ARDC No. 196353)
    Douglas A. Millen (ARDC No. 6226978)
    **FREED KANNER LONDON &**
    **MILLEN LLC**
    2201 Waukegan Road, Suite 130
    Bannockburn, IL  60015
    Telephone: (224) 632-4500
    Facsimile:  (224) 632-4521
    Email:  mfreed@fklmlaw.com
    skanner@fklmlaw.com
    wlondon@fklmlaw.com
    dmillen@fklmlaw.com

    Guido Saveri
    R. Alexander Saveri
    Cadio Zirpoli
    **SAVERI & SAVERI, INC.**
    111 Pine Street, Suite 1700
    San Francisco, CA   94111
    Telephone: (415) 217-6810

    Robert J. Bonsignore
    Robin E. Brewer
    **BONSIGNORE & BREWER**
    23 Forest Street
    Medford, MA 02155
    Telephone: (781) 391-9400

    ***Attorneys for Plaintiff and the***
    ***Proposed Class***

14

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| S.A.E. WAREHOUSE, INC.,<br>on behalf of itself and all others similarly<br>situated, | ) <br> ) <br> ) <br> ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) <br> ) | |
| | ) | |
| v. | ) <br> ) | **CLASS ACTION COMPLAINT** |
| CHAMPION LABORATORIES, INC.,<br>PUROLATOR FILTERS N.A. L.L.C.,<br>HONEYWELL INTERNATIONAL INC.,<br>WIX FILTRATION PRODUCTS,<br>CUMMINS FILTRATION INC., THE<br>DONALDSON COMPANY, BALDWIN<br>FILTERS INC., BOSCH U.S.A., MANN +<br>HUMMEL U.S.A., INC.,<br>ARVINMERITOR, INC., UNITED<br>COMPONENTS, INC. and THE<br>CARLYLE GROUP, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **JURY TRIAL DEMANDED**<br><br>`FILED: MAY 14, 2008`<br>`08CV2804        AEE`<br>`JUDGE SHADUR`<br>`MAGISTRATE JUDGE KEYS` |
| Defendants. | ) <br> ) | |

Plaintiff S.A.E. Warehouse, Inc., by its attorneys, individually and on behalf of a plaintiff class of direct purchasers (the "Class") defined below, brings this civil action against Defendants named in this Complaint for damages, costs, attorneys' fees, and injunctive relief under the antitrust laws of the United States, and demands a trial by jury. Plaintiff alleges that Defendants themselves or through their predecessors, controlled subsidiaries, or affiliates, conspired to fix, raise, maintain, and stabilize the price of replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters ("Filters") sold in the United States from at least as early as January 1, 1999 through the present (the "Class Period"), all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As a result of Defendants' unlawful conduct, Plaintiff and

members of the proposed Class paid higher prices for Filters than they would have paid in a competitive market, and have suffered antitrust injury to their business and property as a result. Plaintiff makes these allegations upon information and belief, except those allegations pertaining to Plaintiff, which Plaintiff alleges upon personal knowledge.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to enjoin Defendants' further violations, as alleged in this Complaint.

2.      This Court has subject matter jurisdiction of this action pursuant to Section 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26, and 28 U.S.C. § 1331 and 1337.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § § 15 (a) and 22 because during the Class Period, one or more Defendants resided, transacted business, were found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described in this Complaint has been carried out in this District.

4.      This Court has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

2

## DEFINITIONS

As used in this Complaint, the following terms have the following meanings:

5.      "Class" is defined in Paragraph 29 below.

6.      "Class Period" means the time period beginning at least January 1, 1999 through the present.

7.      "Filters" includes, among other things, replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters.  Filters are used to remove contaminants from combustion engines and related systems.  Specifically, oil filters remove contaminants from the motor oil used to lubricate an engine; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; engine air filters prevent particulate matter from entering an engine's cylinders; cabin air filters prevent particulate matter from entering the vehicle's HVAC system; coolant filters remove solid contaminants from the coolant; hydraulic filters are used for a variety of applications; and transmission filters remove contaminants from an engine's transmission systems.

8.      "Person" includes not only natural persons but also any other legal business entity, including without limitation corporations, partnerships and sole proprietorships.

9.      References made in this Complaint to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

## INTERSTATE COMMERCE

10.      The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

11.      During the Class Period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers throughout the United States.

3

## THE PARTIES

12.     Plaintiff S.A.E. Warehouse, Inc., is a South Dakota corporation with its principal place of business at 2605 South Shirley Avenue, Sioux Falls, South Dakota 57106-4320. Plaintiff purchased Filters in the United States directly from one or more of the Defendants during the Class Period, and has suffered antitrust injury as a result of Defendants' unlawful conduct as alleged in this Complaint.

13.     Defendant Champion Laboratories, Inc. is a Delaware corporation with its principal place of business at 200 S. Forth Street, Albion, Illinois 62806.  During the Class Period, Defendant Champion manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Champion Quality Oil Filters, Champion Quality Air Filters, Kleener® Cabin Air Filters, Champion Quality Fuel Filters, Champion Quality Transmission Filters, and PetroClear® Dispensing Filters.  Through its Luber-finer subsidiary, Champion manufactures and distributes heavy-duty Filters for, *inter alia,* transportation, off road/mining, marine, agriculture, and automotive light truck uses.

14.     Defendant United Components, Inc. is a Delaware corporation with its principal place of business at 14601 Highway 41 N., Evansville, Indiana 47725-9357.  Defendant Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc.  During the Class Period, Defendant United Components manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

15.     Defendant The Carlyle Group is a private investment group partnership with a business address at 1001 Pennsylvania Ave NW #220, Washington, DC 20004-2505.  The Carlyle Group owns Defendant United Components, Inc.  During the Class Period, Defendant

The Carlyle Group manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

16.     Defendants Champion Laboratories, Inc., United Components Inc. and The Carlyle Group are collectively referred to in this Complaint as "Champion."

17.     Defendant Purolator Filters N.A. L.L.C. is a Delaware corporation with its principal place of business at 3200 Natal St., Fayetteville, North Carolina 28306-2845. During the Class Period, Defendant Purolator Filters manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: PureONE Oil Filters, PremiumPLUS Oil Filters, PureONE Air Filters, PremiumPLUS Media Air Filters, and BreatheEASY® Cabin Air Filters. Purolator Filters N.A. L.L.C. is a joint venture between Defendants Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

18.     Defendant Bosch U.S.A. is a U. S. branch of Robert Bosch GmbH, a privately held German conglomerate. Bosch U.S.A.'s parent company, Robert Bosch LLC, is headquartered at 38000 Hills Tech Drive, Farmington, Michigan 48331. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Bosch Premium Cabin Filters, Bosch Particulate Filters, Bosch Activated Charcoal Filters, Bosch Fuel Filters and Bosch FILTECH Oil Filters.

19.     Defendant Mann + Hummel U.S.A. is a Michigan corporation, and is the United States subsidiary of the MANN + HUMMEL Group, a German business entity. Mann + Hummel's U.S. business headquarters are at 6400 S. Sprinkle Road, Portage, Michigan 49002. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters

throughout the United States directly or through its subsidiaries and affiliates, principally under the MANN-FILTER brand.

20.     Defendant ArvinMeritor Inc. is a Michigan corporation with its principal place of business at 2135 West Maple Road, Troy, MI 48084.   During the Class Period, Defendant ArvinMeritor manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.   Prior to April 2006, Defendant Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc.

21.     Defendants Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A. and ArvinMeritor Inc. are collectively referred to in this Complaint as "Purolator."

22.     Defendant Honeywell International ("Honeywell") is a Delaware corporation with its principal place of business at 100 Columbia Road, Morristown, New Jersey 07962.   During the Class Period, Defendant Honeywell International manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally through its Honeywell International Consumer Products Group division, and principally under the FRAM® filter brand.

23.     Defendant Wix Filtration Corp. LLC is a Delaware corporation with its principal place of business at One Wix Way, Gastonia, North Carolina 28054.   During the Class Period, Defendant Wix manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the Wix® Filter brand.

24.     Defendant Cummins Filtration Inc. is an Indiana corporation with its principal place of business at 2931 Elm Hill Pike, Nashville, Tennessee 37214.   During the Class Period, Defendant Cummins manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands:

OptiAir™, Magnum RS™, Direct Flow™, Fleetguard's FS1000™, Fuel Pro® filter, Diesel Pro®

filter, Industrial Pro™ filter, Duramax™, and Venturi™ Combo System.

25.    Defendant The Donaldson Company is a Delaware corporation with its principal

place of business at 1400 West 94th St., Minneapolis, Minnesota 55431.  During the Class

Period, Defendant Donaldson manufactured, sold and distributed Filters throughout the United

States directly or through its subsidiaries and affiliates, principally under the Donaldson brand.

26.    Defendant Baldwin Filters, Inc. is a Delaware corporation with its principal place

of business at 4400 E. Hwy. 30, Kearney, Nebraska 68848-6010.  During the Class Period,

Defendant Donaldson manufactured, sold and distributed Filters throughout the United States

directly or through its subsidiaries and affiliates under the Baldwin brand.

## CO-CONSPIRATORS

27.    The acts alleged in this Complaint engaged in by Defendants were performed by

their officers, directors, agents, employees or representatives while engaged in the management,

direction, control or transaction of the Defendants' business affairs.

28.    Various other persons, firms and corporations not named as Defendants in this

Complaint have participated as co-conspirators in the violations alleged in this Complaint and

have aided, abetted and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3)

of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors,
> parents, subsidiaries, affiliates and co-conspirators, and
> government entities) who purchased Filters in the United States
> directly from the Defendants or any of their predecessors, parents,
> subsidiaries, or affiliates, at any time during the period from
> January 1, 1999 to the present.

30.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators. However, based on the nature of the trade and commerce involved, Plaintiff believes that Class members are sufficiently numerous – at least in the thousands -- and geographically dispersed so that joinder of all Class members is impracticable.

31.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Filters and its interests are consistent with and not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

32.     There are questions of law or fact common to the Class, including:

(a)     Whether Defendants and their co-conspirators combined or conspired to fix, raise, maintain or stabilize prices of Filters, rig bids or allocate customers for Filters;

(b)     Whether Defendants' combination or conspiracy as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c)     Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

(d)     Whether the effect of Defendants' conspiracy on the prices of Filters sold to purchasers in the United States during the Class Period caused Plaintiff and other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

(e)     The appropriate nature of class-wide equitable relief; and

8

(f)    The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

33.    These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

34.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

35.    Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INDUSTRY BACKGROUND

36.    An oil filter is a device used to remove particulate matter and otherwise decontaminate oil, and is found in nearly every vehicle and other internal combustion engine sold in the United States.  The filtration of oil in engines is essential for enhancing engine longevity and performance and preventing premature wear.

37.    A fuel filter is used in the fuel system of almost any fuel-burning engine to screen out dirt, rust and other contaminants from the fuel.  All of the fuel that enters the engine must first pass through the fuel filter, and these filters are found in most internal combustion engines.

Fuel filters improve an engine's performance, as the fewer contaminants present in the fuel, the more efficiently it can be burned.

38.    An engine air filter removes soot, carbon, abrasives and other contaminants from the air before the air mixes with fuel in an engine's air induction system.  The engine air filter is used to prevent abrasive particulates from entering the engine, which can damage cylinder walls, pistons and piston rings.

39.    A cabin air filter captures airborne contaminants such as soot, dirt, pollen, and other pollutants, that enter a vehicle cabin through its heating, ventilating and air conditioning ("HVAC") system.  A cabin air filter also prevents leaves, dirt, bugs and other debris from entering the HVAC system and negatively impacting its operation.

40.    A coolant filter is used on most types of fluid-cooled engines.  These filters help to maintain proper engine heat transfer by filtering solid contaminants from the coolant and by minimizing corrosion and deposits in the cooling system.

41.    A hydraulic filter is used for a variety of applications for heavy truck, off-highway, agricultural, and construction vehicles and equipment, which depend on hydraulic fluids to power many of their critical functions.

42.    A transmission filter prevents harmful contaminants from entering a transmission's hydraulic system, where they could increase wear and cause scoring and sticking of hydraulic control valves.  Additionally, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure. Normally transmission filters trap metal chips from hard parts like gears and bushings and the normal fine material that results from wear of the hydraulic clutch facings and bands.

43.     Filters become less effective over time as contaminants are filtered out of the respective engine systems, and therefore filters must be replaced periodically.  Replacement filters are purchased to replace original equipment filters included in new combustion engines.

44.     Filters are typically detachable units that require regular service or replacement. They are essentially fungible products.

45.     Oil, air, fuel, cabin, coolant, hydraulic, and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

46.     OEMs purchase filters for use in connection with new vehicles.  These filters are installed in vehicles during the production process.

47.     Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals to replace their own Filters.

48.     Filter manufacturers such as Defendants sell Filters primarily to OEMs  and Aftermarket Sellers, such as Plaintiff and other members of the Class.  The allegations in this Complaint involve the Filters aftermarket.

49.     Defendants are the primary manufacturers of aftermarket Filters in the United States.

50.     The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products.  This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy.  For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to

Defendants Bosch and Mann + Hummel. Defendants Bosch and Mann + Hummel now operate Defendant Purolator as a joint venture. Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

51.    Annual revenues for Filters are approximately $3-5 billion in the United States.

## DEFENDANTS' UNLAWFUL CONDUCT

52.    During the Class Period, Defendants and their co-conspirators conspired or combined to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States. They accomplished this by, among other things, (i) face-to-face meetings at industry trade shows and other locations and (ii) exchanging confidential information and communications regarding pricing.

53.    The purpose of these secret, conspiratorial meetings, discussions and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

54.    As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids and allocated customers for Filters during the Class Period.

55.    In formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

(a)    Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Filters;

(b)    Agreeing to charge prices for Filters at specified levels and to allocate customers and otherwise fixing, increasing, maintaining or stabilizing the prices of Filters sold to purchasers in the United States;

(c)    Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

(d)    Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

(e)    Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

(f)    Communicating with one another to discuss the prices, customers, markets and price levels of Filters sold in the United States;

(g)    Authorizing or consenting to the participation of employees in the conspiracy; and

(h)    Concealing the conspiracy and conspiratorial contacts through various means.

56.    At least as early as 1999, Defendants and their co-conspirators had many confidential discussions with each other and extensive communications regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.

57.    For example, during the Class Period Defendants provided information regarding their planned price increases to their competitors before they provided it to customers or the general public, for the purpose of ensuring that their competitors were aware of and would abide by their agreement to follow their competitors' price increases.

58.    Defendants also met face-to-face regarding their respective companies' contemplated price increases, including at industry trade shows, including the Heritage Show and

the annual Filter Council meeting, both in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

59.    Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4 – 6 percent each.

60.    On January 19, 2006, William G. Burch, former employee of both Purolator N.A. L.L.C. and Champion Laboratories, Inc., filed a complaint against Champion Laboratories in state court in Tulsa, Oklahoma, alleging, among other things, that Burch was wrongfully terminated from his employment with Champion Laboratories for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in this Complaint. Mr. Burch's complaint was removed to federal court and then transferred to the United States District Court for the Southern District Illinois for consolidation with a subsequently filed action, *Champion Laboratories, Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

61.    On March 25, 2008, Mr. Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an affidavit under oath in connection with the *Champion Laboratories* case. Mr. Burch's affidavit, purporting to be based on his personal knowledge, states in part:

(a)    Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the

14

mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

(b)    Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion.  I refused to conduct those discussions."

62.    Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

63.    By coordinating their pricing activities and allocating customers, Defendants have removed from Plaintiff the ability to constrain Defendants' pricing by moving (or threatening to move) its Filter business from one Defendant to another in response to price increases.

64.    Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers, including Plaintiff.  With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain these customers.

65.    The likelihood that Defendants would have moderated their price increases or, indeed, decreased their prices is particularly strong in the face of Champion's developments in filter technology which have reduced the amount of steel used in its Filters.

66.    As a result of Defendants' unlawful conspiracy, Plaintiff has been forced to pay supracompetitive prices for Defendants' Filters.

## **FRAUDULENT CONCEALMENT**

67.    Defendants fraudulently concealed their participation in the conspiracy alleged in this Complaint by, *inter alia*, engaging in secret meetings and communications in furtherance of

15

the conspiracy, and by holding themselves out to the public and their customers, including Plaintiff, as true competitors.

68.    Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, Plaintiff could not have discovered the existence of this conspiracy until shortly before this action was commenced.

69.    Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors.  At no time in their public statements did Defendants disclose their collusive conduct which formed all or a significant part of the basis for Defendants' prices and price increases.

70.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any statute of limitations otherwise applicable to the allegations in this Complaint has been tolled.

## CLAIM FOR RELIEF

### (Sherman Act Section 1 - Horizontal Price-Fixing Against All Defendants)

71.    Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters.  This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

72.    This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

73.    This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiff and the Class to pay artificially high prices for Defendants' Filters.

16

74.    As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff and other members of the Class have been injured in their business and property in an amount not presently known in that they paid more during the Class Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## RELIEF SOUGHT

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A.    That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B.    That the Court find and declare Defendants' unlawful combination or conspiracy as alleged in this Complaint to be a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C § 1;

C.    That the Court award Plaintiff and the Class damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D.    That the Court permanently enjoin Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf from in any manner:

(1)    continuing, maintaining or renewing the combination or conspiracy alleged herein, or from engaging in any other combination or conspiracy having a similar purpose or effect, and from adopting or

17

following any practice, plan, program or device having a similar

purpose or effect; and

(2)     communicating or causing to be communicated to any other person

engaged in the manufacture, distribution or sale of Filters information

concerning prices, customers, markets or other terms or conditions of

sale of any such product except to the extent necessary in connection

with bona fide sales transactions between the parties to such

communications.

E.    That the Court award Plaintiff and the Class expenses and costs of suit,

including reasonable attorneys' fees, to the extent provided by law;

F.    That the Court award Plaintiff and the Class pre-judgment and post-judgment

interest at the highest legal rate to the extent provided by law; and

G.    That the Court award Plaintiff such additional relief as it may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues so triable.


Date: May 14, 2008           By:   /s/ Douglas A. Millen
                          Michael J. Freed (ARDC No. 0869120)
                          Steven A. Kanner (ARDC No. 3125292)
                          William H. London (ARDC No. 6196353)
                          Douglas A. Millen (ARDC No. 6226978)
                          **FREED KANNER LONDON & MILLEN LLC**
                          2201 Waukegan Road, Suite 130
                          Bannockburn, IL  60015
                          Telephone: (224) 632-4500
                          Facsimile:  (224) 632-4521
                          Email: mfreed@fklmlaw.com
                                    skanner@fklmlaw.com
                                  wlondon@fklmlaw.com
                                  dmillen@fklmlaw.com

W. Joseph Bruckner
Heidi M. Silton
Anna M. Horning Nygren
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Tel:    (612) 339-6900
Fax:    (612) 339-0981
Email: wjbruckner@locklaw.com
            hmsilton@locklaw.com
            amhorningnygren@locklaw.com

Jayne Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle, Suite 216
Weston, FL  33326
Tel:    (954) 515-0123
Fax:    (954) 515-0124
Email: jgoldstein@magergoldstein.com

Lee Albert
**MAGER & GOLDSTEIN LLP**
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Tel:  (215) 640-3280
Fax:  (215) 640-3281
Email: lalbert@magergoldstein.com

Dennis J. Stewart
**HULETT, HARPER, STEWART, LLP**
550 West C Street, Suite 1600
San Diego, CA  92101
Tel:  (619) 338-1133
Fax:  (619) 338-1139
Email: dstewart@hulettharper.com


***Counsel for Plaintiff S.A.E. Warehouse, Inc. and
the Proposed Class***

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAWNEE/S.A.E. WAREHOUSE, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC., UNITED COMPONENTS, INC. and THE CARLYLE GROUP, <br><br> Defendants. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br><br> FILED: MAY 14, 2008 <br> 08CV2806          AEE <br> JUDGE SHADUR <br> MAGISTRATE JUDGE DENLOW |

Plaintiff Pawnee/S.A.E. Warehouse, Inc., by its attorneys, individually and on behalf of a plaintiff class of direct purchasers (the "Class") defined below, brings this civil action against Defendants named in this Complaint for damages, costs, attorneys' fees, and injunctive relief under the antitrust laws of the United States, and demands a trial by jury. Plaintiff alleges that Defendants themselves or through their predecessors, controlled subsidiaries, or affiliates, conspired to fix, raise, maintain, and stabilize the price of replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters ("Filters") sold in the United States from at least as early as January 1, 1999 through the present (the "Class Period"), all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As a result of Defendants' unlawful conduct, Plaintiff and

members of the proposed Class paid higher prices for Filters than they would have paid in a competitive market, and have suffered antitrust injury to their business and property as a result. Plaintiff makes these allegations upon information and belief, except those allegations pertaining to Plaintiff, which Plaintiff alleges upon personal knowledge.

## JURISDICTION AND VENUE

1.    Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to enjoin Defendants' further violations, as alleged in this Complaint.

2.    This Court has subject matter jurisdiction of this action pursuant to Section 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15(a) and 26, and 28 U.S.C. § 1331 and 1337.

3.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. §§ 15 (a) and 22 because during the Class Period, one or more Defendants resided, transacted business, were found, or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described in this Complaint has been carried out in this District.

4.    This Court has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

2

## DEFINITIONS

As used in this Complaint, the following terms have the following meanings:

5.    "Class" is defined in Paragraph 29 below.

6.    "Class Period" means the time period beginning at least January 1, 1999 through the present.

7.    "Filters" includes, among other things, replacement oil, engine air, cabin air, coolant, fuel, hydraulic, and transmission filters. Filters are used to remove contaminants from combustion engines and related systems. Specifically, oil filters remove contaminants from the motor oil used to lubricate an engine; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; engine air filters prevent particulate matter from entering an engine's cylinders; cabin air filters prevent particulate matter from entering the vehicle's HVAC system; coolant filters remove solid contaminants from the coolant; hydraulic filters are used for a variety of applications; and transmission filters remove contaminants from an engine's transmission systems.

8.    "Person" includes not only natural persons but also any other legal business entity, including without limitation corporations, partnerships and sole proprietorships.

9.    References made in this Complaint to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

## INTERSTATE COMMERCE

10.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

11.    During the Class Period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers throughout the United States.

## THE PARTIES

12.     Plaintiff Pawnee/S.A.E. Warehouse, Inc., is a South Dakota corporation with its principal place of business at 404 11th Street, Rapid City, South Dakota 57701-2682. Plaintiff purchased Filters in the United States directly from one or more of the Defendants during the Class Period, and has suffered antitrust injury as a result of Defendants' unlawful conduct as alleged in this Complaint.

13.     Defendant Champion Laboratories, Inc. is a Delaware corporation with its principal place of business at 200 S. Forth Street, Albion, Illinois 62806. During the Class Period, Defendant Champion manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Champion Quality Oil Filters, Champion Quality Air Filters, Kleener® Cabin Air Filters, Champion Quality Fuel Filters, Champion Quality Transmission Filters, and PetroClear® Dispensing Filters. Through its Luber-finer subsidiary, Champion manufactures and distributes heavy-duty Filters for, *inter alia,* transportation, off road/mining, marine, agriculture, and automotive light truck uses.

14.     Defendant United Components, Inc. is a Delaware corporation with its principal place of business at 14601 Highway 41 N., Evansville, Indiana 47725-9357. Defendant Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc. During the Class Period, Defendant United Components manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

15.     Defendant The Carlyle Group is a private investment group partnership with a business address at 1001 Pennsylvania Ave NW #220, Washington, DC 20004-2505. The Carlyle Group owns Defendant United Components, Inc. During the Class Period, Defendant

4

The Carlyle Group manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.

16.    Defendants Champion Laboratories, Inc., United Components Inc. and The Carlyle Group are collectively referred to in this Complaint as "Champion."

17.    Defendant Purolator Filters N.A. L.L.C. is a Delaware corporation with its principal place of business at 3200 Natal St., Fayetteville, North Carolina 28306-2845. During the Class Period, Defendant Purolator Filters manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: PureONE Oil Filters, PremiumPLUS Oil Filters, PureONE Air Filters, PremiumPLUS Media Air Filters, and BreatheEASY® Cabin Air Filters. Purolator Filters N.A. L.L.C. is a joint venture between Defendants Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

18.    Defendant Bosch U.S.A. is a U. S. branch of Robert Bosch GmbH, a privately held German conglomerate. Bosch U.S.A.'s parent company, Robert Bosch LLC, is headquartered at 38000 Hills Tech Drive, Farmington, Michigan 48331. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands: Bosch Premium Cabin Filters, Bosch Particulate Filters, Bosch Activated Charcoal Filters, Bosch Fuel Filters and Bosch FILTECH Oil Filters.

19.    Defendant Mann + Hummel U.S.A. is a Michigan corporation, and is the United States subsidiary of the MANN + HUMMEL Group, a German business entity. Mann + Hummel's U.S. business headquarters are at 6400 S. Sprinkle Road, Portage, Michigan 49002. During the Class Period, Defendant Bosch U.S.A. manufactured, sold and distributed Filters

5

throughout the United States directly or through its subsidiaries and affiliates, principally under the MANN-FILTER brand.

20.    Defendant ArvinMeritor Inc. is a Michigan corporation with its principal place of business at 2135 West Maple Road, Troy, MI 48084.  During the Class Period, Defendant ArvinMeritor manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates.  Prior to April 2006, Defendant Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc.

21.    Defendants Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A. and ArvinMeritor Inc. are collectively referred to in this Complaint as "Purolator."

22.    Defendant Honeywell International ("Honeywell") is a Delaware corporation with its principal place of business at 100 Columbia Road, Morristown, New Jersey 07962.  During the Class Period, Defendant Honeywell International manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally through its Honeywell International Consumer Products Group division, and principally under the FRAM® filter brand.

23.    Defendant Wix Filtration Corp. LLC is a Delaware corporation with its principal place of business at One Wix Way, Gastonia, North Carolina 28054.  During the Class Period, Defendant Wix manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the Wix® Filter brand.

24.    Defendant Cummins Filtration Inc. is an Indiana corporation with its principal place of business at 2931 Elm Hill Pike, Nashville, Tennessee 37214.  During the Class Period, Defendant Cummins manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the following brands:

6

OptiAir™, Magnum RS™, Direct Flow™, Fleetguard's FS1000™, Fuel Pro® filter, Diesel Pro® filter, Industrial Pro™ filter, Duramax™, and Venturi™ Combo System.

25.    Defendant The Donaldson Company is a Delaware corporation with its principal place of business at 1400 West 94th St., Minneapolis, Minnesota 55431.  During the Class Period, Defendant Donaldson manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates, principally under the Donaldson brand.

26.    Defendant Baldwin Filters, Inc. is a Delaware corporation with its principal place of business at 4400 E. Hwy. 30, Kearney, Nebraska 68848-6010.  During the Class Period, Defendant Donaldson manufactured, sold and distributed Filters throughout the United States directly or through its subsidiaries and affiliates under the Baldwin brand.

## CO-CONSPIRATORS

27.    The acts alleged in this Complaint engaged in by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Defendants' business affairs.

28.    Various other persons, firms and corporations not named as Defendants in this Complaint have participated as co-conspirators in the violations alleged in this Complaint and have aided, abetted and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates and co-conspirators, and government entities) who purchased Filters in the United States directly from the Defendants or any of their predecessors, parents, subsidiaries, or affiliates, at any time during the period from January 1, 1999 to the present.

30.    Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators. However, based on the nature of the trade and commerce involved, Plaintiff believes that Class members are sufficiently numerous – at least in the thousands -- and geographically dispersed so that joinder of all Class members is impracticable.

31.    Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Filters and its interests are consistent with and not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

32.    There are questions of law or fact common to the Class, including:

(a)    Whether Defendants and their co-conspirators combined or conspired to fix, raise, maintain or stabilize prices of Filters, rig bids or allocate customers for Filters;

(b)    Whether Defendants' combination or conspiracy as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c)    Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

(d)    Whether the effect of Defendants' conspiracy on the prices of Filters sold to purchasers in the United States during the Class Period caused Plaintiff and other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

(e)    The appropriate nature of class-wide equitable relief; and

8

(f)    The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

33.    These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

34.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

35.    Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INDUSTRY BACKGROUND

36.    An oil filter is a device used to remove particulate matter and otherwise decontaminate oil, and is found in nearly every vehicle and other internal combustion engine sold in the United States.  The filtration of oil in engines is essential for enhancing engine longevity and performance and preventing premature wear.

37.    A fuel filter is used in the fuel system of almost any fuel-burning engine to screen out dirt, rust and other contaminants from the fuel.  All of the fuel that enters the engine must first pass through the fuel filter, and these filters are found in most internal combustion engines.

Fuel filters improve an engine's performance, as the fewer contaminants present in the fuel, the more efficiently it can be burned.

38.     An engine air filter removes soot, carbon, abrasives and other contaminants from the air before the air mixes with fuel in an engine's air induction system.  The engine air filter is used to prevent abrasive particulates from entering the engine, which can damage cylinder walls, pistons and piston rings.

39.     A cabin air filter captures airborne contaminants such as soot, dirt, pollen, and other pollutants, that enter a vehicle cabin through its heating, ventilating and air conditioning ("HVAC") system.  A cabin air filter also prevents leaves, dirt, bugs and other debris from entering the HVAC system and negatively impacting its operation.

40.     A coolant filter is used on most types of fluid-cooled engines.  These filters help to maintain proper engine heat transfer by filtering solid contaminants from the coolant and by minimizing corrosion and deposits in the cooling system.

41.     A hydraulic filter is used for a variety of applications for heavy truck, off-highway, agricultural, and construction vehicles and equipment, which depend on hydraulic fluids to power many of their critical functions.

42.     A transmission filter prevents harmful contaminants from entering a transmission's hydraulic system, where they could increase wear and cause scoring and sticking of hydraulic control valves.  Additionally, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure. Normally transmission filters trap metal chips from hard parts like gears and bushings and the normal fine material that results from wear of the hydraulic clutch facings and bands.

43.     Filters become less effective over time as contaminants are filtered out of the respective engine systems, and therefore filters must be replaced periodically.   Replacement filters are purchased to replace original equipment filters included in new combustion engines.

44.     Filters are typically detachable units that require regular service or replacement. They are essentially fungible products.

45.     Oil, air, fuel, cabin, coolant, hydraulic, and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

46.     OEMs purchase filters for use in connection with new vehicles.  These filters are installed in vehicles during the production process.

47.     Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals to replace their own Filters.

48.     Filter manufacturers such as Defendants sell Filters primarily to OEMs  and Aftermarket Sellers, such as Plaintiff and other members of the Class.  The allegations in this Complaint involve the Filters aftermarket.

49.     Defendants are the primary manufacturers of aftermarket Filters in the United States.

50.     The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products.  This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy.  For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to

Defendants Bosch and Mann + Hummel.  Defendants Bosch and Mann + Hummel now operate Defendant Purolator as a joint venture.  Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

51.     Annual revenues for Filters are approximately $3-5 billion in the United States.

**DEFENDANTS' UNLAWFUL CONDUCT**

52.     During the Class Period, Defendants and their co-conspirators conspired or combined to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.  They accomplished this by, among other things, (i) face-to-face meetings at industry trade shows and other locations and (ii) exchanging confidential information and communications regarding pricing.

53.     The purpose of these secret, conspiratorial meetings, discussions and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

54.     As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids and allocated customers for Filters during the Class Period.

55.     In formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

(a)     Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Filters;

(b)     Agreeing to charge prices for Filters at specified levels and to allocate customers and otherwise fixing, increasing, maintaining or stabilizing the prices of Filters sold to purchasers in the United States;

12

(c)    Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

(d)    Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

(e)    Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

(f)    Communicating with one another to discuss the prices, customers, markets and price levels of Filters sold in the United States;

(g)    Authorizing or consenting to the participation of employees in the conspiracy; and

(h)    Concealing the conspiracy and conspiratorial contacts through various means.

56.    At least as early as 1999, Defendants and their co-conspirators had many confidential discussions with each other and extensive communications regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.

57.    For example, during the Class Period Defendants provided information regarding their planned price increases to their competitors before they provided it to customers or the general public, for the purpose of ensuring that their competitors were aware of and would abide by their agreement to follow their competitors' price increases.

58.    Defendants also met face-to-face regarding their respective companies' contemplated price increases, including at industry trade shows, including the Heritage Show and

the annual Filter Council meeting, both in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

59.     Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4 – 6 percent each.

60.     On January 19, 2006, William G. Burch, former employee of both Purolator N.A. L.L.C. and Champion Laboratories, Inc., filed a complaint against Champion Laboratories in state court in Tulsa, Oklahoma, alleging, among other things, that Burch was wrongfully terminated from his employment with Champion Laboratories for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in this Complaint. Mr. Burch's complaint was removed to federal court and then transferred to the United States District Court for the Southern District Illinois for consolidation with a subsequently filed action, *Champion Laboratories, Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

61.     On March 25, 2008, Mr. Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an affidavit under oath in connection with the *Champion Laboratories* case. Mr. Burch's affidavit, purporting to be based on his personal knowledge, states in part:

(a)     Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the

mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

       (b)    Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

62.    Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

63.    By coordinating their pricing activities and allocating customers, Defendants have removed from Plaintiff the ability to constrain Defendants' pricing by moving (or threatening to move) its Filter business from one Defendant to another in response to price increases.

64.    Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers, including Plaintiff. With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain these customers.

65.    The likelihood that Defendants would have moderated their price increases or, indeed, decreased their prices is particularly strong in the face of Champion's developments in filter technology which have reduced the amount of steel used in its Filters.

66.    As a result of Defendants' unlawful conspiracy, Plaintiff has been forced to pay supracompetitive prices for Defendants' Filters.

## FRAUDULENT CONCEALMENT

67.    Defendants fraudulently concealed their participation in the conspiracy alleged in this Complaint by, *inter alia*, engaging in secret meetings and communications in furtherance of

the conspiracy, and by holding themselves out to the public and their customers, including Plaintiff, as true competitors.

68.    Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, Plaintiff could not have discovered the existence of this conspiracy until shortly before this action was commenced.

69.    Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors.  At no time in their public statements did Defendants disclose their collusive conduct which formed all or a significant part of the basis for Defendants' prices and price increases.

70.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any statute of limitations otherwise applicable to the allegations in this Complaint has been tolled.

## CLAIM FOR RELIEF

### (Sherman Act Section 1 - Horizontal Price-Fixing Against All Defendants)

71.    Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters.  This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

72.    This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

73.    This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiff and the Class to pay artificially high prices for Defendants' Filters.

16

74.    As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff and other members of the Class have been injured in their business and property in an amount not presently known in that they paid more during the Class Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### RELIEF SOUGHT

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests:

A.    That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B.    That the Court find and declare Defendants' unlawful combination or conspiracy as alleged in this Complaint to be a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C § 1;

C.    That the Court award Plaintiff and the Class damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D.    That the Court permanently enjoin Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf from in any manner:

(1)    continuing, maintaining or renewing the combination or conspiracy alleged herein, or from engaging in any other combination or conspiracy having a similar purpose or effect, and from adopting or

17

following any practice, plan, program or device having a similar

purpose or effect; and

(2)    communicating or causing to be communicated to any other person

engaged in the manufacture, distribution or sale of Filters information

concerning prices, customers, markets or other terms or conditions of

sale of any such product except to the extent necessary in connection

with bona fide sales transactions between the parties to such

communications.

E.    That the Court award Plaintiff and the Class expenses and costs of suit,

including reasonable attorneys' fees, to the extent provided by law;

F.    That the Court award Plaintiff and the Class pre-judgment and post-judgment

interest at the highest legal rate to the extent provided by law; and

G.    That the Court award Plaintiff such additional relief as it may deem proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues so triable.


Date:  May 14, 2008

By: /s/ Douglas A. Millen
    Michael J. Freed (ARDC No. 0869120)
    Steven A. Kanner (ARDC No. 3125292)
    William H. London (ARDC No. 6196353)
    Douglas A. Millen (ARDC No. 6226978)
    **FREED KANNER LONDON & MILLEN LLC**
    2201 Waukegan Road, Suite 130
    Bannockburn, IL  60015
    Telephone: (224) 632-4500
    Facsimile:  (224) 632-4521
    Email: mfreed@fklmlaw.com
        skanner@fklmlaw.com
        wlondon@fklmlaw.com
        dmillen@fklmlaw.com

W. Joseph Bruckner
Heidi M. Silton
Anna M. Horning Nygren
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Tel:     (612) 339-6900
Fax:     (612) 339-0981
Email:   wjbruckner@locklaw.com
             hmsilton@locklaw.com
             amhorningnygren@locklaw.com

Jayne Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle, Suite 216
Weston, FL  33326
Tel:     (954) 515-0123
Fax:     (954) 515-0124
Email:  jgoldstein@magergoldstein.com

Lee Albert
**MAGER & GOLDSTEIN LLP**
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Tel:  (215) 640-3280
Fax:  (215) 640-3281
Email:  lalbert@magergoldstein.com

Dennis J. Stewart
**HULETT, HARPER, STEWART, LLP**
550 West C Street, Suite 1600
San Diego, CA  92101
Tel:  (619) 338-1133
Fax:  (619) 338-1139
Email:  dstewart@hulettharper.com

***Counsel for Plaintiff Pawnee/S.A.E. Warehouse,
Inc. and the Proposed Class***

19

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOVIS AUTO SUPPLY, INC., on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>ROBERT BOSCH, LLC; CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A.. LLC; MANN + HUMMEL USA, INC.; BALDWIN FILTERS, INC.; ARVINMERITOR, INC.; WIX FILTRATION CORPORATION LLC.; and HONEYWELL INTERNATIONAL, INC.<br><br>      Defendants. | Case No.<br><br>JURY TRIAL DEMANDED<br><br> FILED: MAY 19, 2008<br> 08 cv 2903  JH<br> JUDGE NORGLE<br> MAGISTRATE JUDGE BROWN |

## I.  INTRODUCTION

1.  Plaintiff Hovis Auto Supply, Inc. ("Plaintiff) brings this action on behalf of itself individually and on behalf of a plaintiff class (the "Class") consisting of all persons and entities in the United States, who purchased oil filters directly from a defendant between at least as early as January 1, 1999 and the present (the "Class Period").

2.  Defendants are domestic sellers of Filters. For purposes of this Complaint, Filters includes oil, fuel, air, transmission and cabin air filters. Plaintiff alleges that during the Class Period, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which Filters would be sold. As a result of defendants' unlawful conduct, plaintiff and the other members of the Class paid artificially inflated prices for those products. Such prices exceeded the amount they would have paid if the prices had been determined by a competitive market.

## II. JURISDICTION AND VENUE

3.      Plaintiff brings this action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act (15 U.S.C. § 1).

4.      This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

6.      Venue is proper in this judicial district because during the Class Period, one or more of the defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

## III. THE PARTIES

### A.      Plaintiff

7.      During the Class Period, Plaintiff purchased Filters directly from one or more defendants. As a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

### B.      Defendants

8.      Defendant Robert Bosch LLC is headquartered in Broadview, Illinois. During the Class Period, Robert Bosch LLC sold and distributed Filters to customers in the United States.

9.      Defendant Champion Laboratories Inc. is a Delaware corporation with its principal place of business in Albion, Illinois. During the class period, Champion Laboratories Inc. manufactured, sold and distributed Filters to customers in the United States.

10.      Defendant Purolator Filters N.A. LLC is headquartered in Fayetteville, North Carolina. Purolator Filters N.A. LLC is a joint venture between Robert Bosch LLC and Mann + Hummel U.S.A. Inc. and was formed in or about April 2006 when they acquired the Purolator oil, air, fuel and cabin filter business from ArvinMeritor (formerly known as Arvin Industries Inc.). During the Class Period, Purolator Filters N.A. sold and distributed Filters to customers in the United States.

11.      Defendant Mann + Hummel. USA Inc. is headquartered in Portage, Michigan. During the Class period, Mann + Hummel USA Inc. sold and distributed Filters to customers in the United States.

12.      Defendant Baldwin Filters Inc. is headquartered in Kearney, Nebraska. During the Class Period, Baldwin Filters Inc. sold and distributed Filters to customers in the United States.

13.      ArvinMeritor, Inc. is a Nevada corporation with its headquarters in Troy, Michigan. In or about February 1999, Arvin Industries acquired Purolator's filter business from Mark IV Industries Inc. During the Class Period, ArvinMeritor, Inc. sold and distributed Filters to customers in the United States.

14.      Defendant Wix Filtration Corporation LLC is headquartered in Gastonia, North Carolina. During the Class Period, Wix Filtration Corporation LLC sold and distributed Filters to customers in the United States.

15.    Defendant Honeywell International, Inc. is headquartered in Morristown, New Jersey. During the Class Period, Honeywell International, Inc. sold and distributed Filters to customers in the United States.

**C.    Agents and Co-Conspirators**

16.    The acts alleged against the defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses or affairs.

17.    Certain other persons, firms, corporations and entities have participated as unnamed co-conspirators as defendants in the violations and conspiracy alleged herein. In order to engage in the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

18.    At all. relevant times, each defendant was an agent of each of the remaining defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each defendant ratified and/or authorized the wrongful acts of each of the defendants. Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts and transactions that are the subject of this action.

### IV. CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities in the United States who purchased Filters directly from a defendant between at least as early as January 1, 1999 and the present. This class excludes any judicial officer who is assigned to hear any aspect of this action, governmental entities, defendants, co-conspirators, other sellers or providers of Filters,

and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

20.    Plaintiff believes that there are hundreds, if not thousands, of Class members as above described, the exact number and their identities being known by defendants.

21.    The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

22.    There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

a.    Whether defendants and their co conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of Filters and/or engaged in market allocation for those products sold in the United States;

b.    The identity of the participants in the conspiracy;

c.    The duration of the conspiracy alleged in this complaint and the nature and character of the acts performed by defendants and their co conspirators in furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.    Whether the conduct of defendants and their co conspirators, as alleged in this complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f.    The effect of defendants' conspiracy on the prices of Filters sold in the United States during the Class Period; and

g.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

23.    Plaintiff is a member of the Class, Plaintiff's claims are typical of the claims of the Class members, and plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a direct purchaser of Filters and its interests coincide with and are not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

24.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

25.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

26.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

27.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of defendants and their co conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust

claim such as is asserted in this complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## V. TRADE AND COMMERCE

28.     During the Class Period, defendants sold substantial quantities of Filters in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

29.     The business activities of defendants that are the subject of this action were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## VI. FACTUAL ALLEGATIONS

**A.     Background of the Domestic Filter Market**

30.     Filters, as defined herein, includes oil, fuel, air, transmission and cabin air filters. Oil filters are designed to keep damaging components away from sensitive parts of combustion engines. Fuel filters protect the fuel system components in a vehicle from contaminants in the fuel.  Air filters are designed to remove soot, carbon, abrasives and other contaminants from the air before the air mixes with fuel in the engine conduction system.  Transmission filters are designed to protect transmissions against contaminants in the transmission fluid system.  Cabin air filters are designed to capture airborne contaminants that enter the vehicle cabin through its heating, air conditioning and defrosting system.

31.     Defendants are the principal manufactures and distributors of Filters in the United States. They sell to Original Equipment Manufacturers, such as automobile manufacturers, which utilize Filters during the vehicle manufacturing process, and also to various aftermarket entities such as retailers, auto shops and service stations, which distribute Filters as replacement products.

32.     The United States market for Filters is highly concentrated with a small number of major companies, almost all of whom are named as defendants in this complaint, manufacturing and selling these products.

33.     Domestic sales of Filters in the United States are substantial. Sales of aftermarket automotive oil, fuel, transmission and cabin air filters, which is the largest segment of the Filters market, exceed one billion dollars annually.

34.     Filters are highly fungible and are perceived as commodity products by customers. Purchasers decide, and competitors compete, largely based on price.

35.     Although Filters are fungible between sellers, there are no ready substitutes available for these products because their utility requires conformance with technical specifications of the engines in which they are to be used.

36.     There are substantial barriers to enter the domestic Filter industry, including: (1) entrenched market positions by the incumbent Filter manufacturers; (2) the high costs associated with the manufacture of Filters; and (3) the need to develop a customer base. These barriers facilitate the conspiracy alleged herein because they insulate existing Filter manufacturers from new competition and perpetuate the high market concentration.

37.     Within the Filters market each of the defendants here participates in trade association activities that provide opportunities for collusion. For example, the defendants, or their affiliated entities, are members of the Filter Manufacturers Council which was founded in 1971 to represent interests of North American manufacturers of filtration products.

38.     The structure of the Filters market facilitates clandestine price fixing activity because it is highly concentrated with few sellers, almost all of whom are the defendants, Filters are highly standardized products, demand is inelastic and there are substantial barriers to entry.

**B.     Defendants' Antitrust Violations**

39.     Beginning at least as early as January 1999, the exact dates being unknown to Plaintiff, defendants and their co conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize prices of Filters sold in the United States in violation of Section 1 of the Sherman Act.

40.     The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and their co conspirators, the substantial terms of which were to fix, raise and maintain, or stabilize prices for Filters and/or engage in market allocation for those products in the United States.

41.     During the Class Period, defendants facilitated their conspiracy by instructing employees to contact competitors regularly to exchange information about price of Filter products. Such exchanges occurred by telephone, facsimile, e-mail and during face to face meetings.

42.     Defendants provided advance notice concerning price increases to competitors and received similar advance notice concerning price increases from competitors. For example, in June 1999 a Purolator senior executive faxed his counterpart at Honeywell a letter which announced a 6% price increase for prices of all Purolator branded filters effective on August 15, 1999. The notice was not sent to the company's customers until two weeks later. Defendants implemented a price increase in 1999.

43.     In our about September 1993, senior officials at Champion Laboratories Inc. directed the company's National Accounts Manager to contact his counterpart at Purolator to inform him that Champion Laboratories Inc. intended to "bid high" on an aftermarket filter bid.

44.     In February 2004, at a meeting of Champion Laboratories Inc. sales representatives, the company's president informed his sales team that Champion Laboratories, Inc. planned to increase prices and instructed the team to ensure that competitors followed.

45.     An internal company e-mail from 2004 with the subject line "price increases," acknowledges that Champion Laboratories Inc. and other defendants had agreed to a coordinated price increase. Defendants implemented two price increases in 2004.

46.     Defendants' price increases for Filters in 1999, early 2004, late 2004 and early 2005 ranged from about 4% to 6% each.

47.     In formulating and effectuating the aforesaid contract, combination or conspiracy, defendants and their co conspirators did those things that they unlawfully combined and conspired to do, including, among other things:

    a.     agreeing to charge prices at certain levels and otherwise to fix, increase, maintain and/or stabilize prices of Filters and/or allocate the market;

    b.     exchanging information with competitors about sales prices for Filters;

    c.     monitoring and implementation of the arrangements among cartel members; and

    d.     marketing and selling Filters at the agreed upon prices.

48.     The activities described above have been engaged in by defendants and their co-conspirators for the purpose of effectuating the unlawful agreements to fix, maintain, raise and/or stabilize prices of Filters and/or engaged in market allocation for those products.

## VII. FRAUDULENT CONCEALMENT

49.     Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, at or shortly prior to the filing of this complaint.

50.     Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators to avoid detection and affirmatively conceal such violations.

51.     As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by plaintiff and the members of the Class.

52.     Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

53.     Beginning in January 1999, or at some earlier time, defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Filters in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

54.     Defendants' unlawful conduct resulted in artificially high prices charged by defendants and their co conspirators to Plaintiff and the members of the Class for Filters.

55.     Plaintiff and members of the Class had to pay more for Filters than they would have paid in a competitive marketplace.

56.     Plaintiff seeks to recover for these overcharge damages.

57.     As a direct and proximate result of defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Filters than they would have paid absent defendants' conduct. Plaintiff's

injuries are of the type the antitrust laws were designed to prevent and flow from that which makes defendants' conduct unlawful.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

C.    That judgment be entered for plaintiff and members of the Class against defendants for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.    That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1)    continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

(2)    communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of any product except to the extent necessary in connection with a bona fide sales transactions between the parties to such communications.

E.     That plaintiff and members of the Class have such other, further and different

relief as the case may require and the Court may deem just and proper under the circumstances.

### JURY DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all

triable issues.

<u>/s/ Steven A. Hart, Esq.</u>
Steven A. Hart, Esq. (#6211008)
Attorneys for Defendant
**SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.**
233 South Wacker Drive
Sears Tower-Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645.7800
Facsimile:  (312) 645.7711

Bruce L. Simon
PEARSON, SIMON, SOTER, WARSHAW & PENNY,
LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008